**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

—————————————

No. 98-60021
Summary Calendar

—————————————


ANTHONY MARINELLO,

Plaintiff-Appellant,

VERSUS

PHILLIP A. BUSHBY and DWIGHT MERCER,
Individually and in Their Official Capacities,

Defendants-Appellees.


———————————————————

Appeal from the United States District Court
for the Northern District of Mississippi
(1:95-CV-167-D-D)

———————————————————

November 17, 1998

Before JOLLY, SMITH, and WIENER, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]


Anthony Marinello appeals a summary judgment on his First Amendment right not to speak claim and a judgment as a matter of law ("j.m.l.") on his freedom of speech claim. Finding no error, we affirm.


I.

————————————

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

In the fall of 1994, Marinello was in his third year of a four-year program pursuing a degree in veterinary medicine from the College of Veterinary Medicine ("CVM") at Mississippi State University.[1]  As part of his course work, he participated in a food animal rotationSSa small class with hands-on experience and several faculty instructors.  He complained, both in person and by letter, to Roger Easley, a professor with certain administrative responsibilities, that one of the instructors, Wayne Groce, had treated him unfairly.[2]  Easley had Marinello complete the rotation without further instruction from Groce.  Even without Groce's input, Marinello received a "D."

By a letter distributed to veterinary faculty and the dean, defendant Dwight Mercer, Marinello appealed the grade by way of a letter that contained statements asserting unprofessional, unethical, collusive, and corrupt conduct on the part of several faculty members, including Groce, Easley, Bruce Clark, the course leader, and Sherrill Fleming, one of the other rotation instructors.  The appeal found its way to the Academic and Professional Standards Committee ("APSC"), the CVM body responsible for handling grade appeals, which recommended that the dean uphold the "D" grade.  Marinello was so advised.

Meanwhile, by letter to the dean, Easley complained that

---

[1] The program requires four years of study, but, at the time, applicants had to reapply each of the four years for admission to the next phase.  Because of poor performance in a class at the end of the second phase, Marinello entered the third phase on academic probation.

[2] Marinello also sent the letter to other members of the food animal faculty and administration.

Marinello had violated standards of reasonable professional behavior by making false accusations, distortions of facts, and slanderous comments in his grade appeal letter. Easley formally requested a review by the APSC of Marinello's conduct.

The dean notified Marinello of the professor's charges and referred the matter to the Academic and Professional Standards Select Committee ("APSSC").[3] The APSSC was to consider both Easley's complaint and Marinello's claim, articulated in his grade appeal letter, that he had been verbally harassed by Groce and mistreated by other faculty members. Marinello was notified of the committee's hearing and given the opportunity to submit documents, identify witnesses he wanted interviewed, and make a personal oral presentation to the committee.

The APSSC found that in the letter appealing his grade, Marinello had made false statements regarding faculty. It found further that the statements violated the professional guidelines applicable to veterinary students and practicing veterinarians.

In his letter to Marinello reporting the APSSC's findings, the dean informed Marinello that he was being placed on disciplinary probation as a result of his breach of the conduct normally expected of a professional student and directed Marinello, *inter alia*, to provide the dean with an essay synopsizing the Principles of Veterinary Medical Ethics and discussing the application of

---

[3] The APSSC was established specifically to hear this complaint, because Easley had requested that one member of the APSC who worked under Easley be recused to avoid the appearance of impropriety. Two other individuals, including a student, were added to the APSC, forming the select committee.

those principles to the actions Marinello had taken during the grade appeal process, and to set up a meeting to discuss the synopsis and events with the dean. The dean's letter advised Marinello that his admission to phase four (final year) of his studies was contingent on his compliance with the dean's directions.

Marinello sought review by a university committee of the grade appeal, the complaints regarding his letter, and the dean's resulting disciplinary action. This committee also upheld the grade determination and ethics violation; it referred the disciplinary matter back to the dean. When his admission to phase four of his veterinary training was denied, ostensibly because of his failure to complete the dean's assignment, Marinello filed this action.

II.

Marinello sued Mercer and Phillip Bushby, Director of Academic Programs, alleging, *inter alia*, that the dean's writing assignment violated his First Amendment right not to speak and that he was denied admission to his fourth year of veterinary school in retaliation for the exercise of his free speech rights in his grade appeal letter. After initially granting a temporary restraining order requiring Marinello's admission, the district court denied a preliminary injunction, ruling that Marinello had failed to carry his burden of establishing the existence of a substantial likelihood that he would prevail on the merits. We affirmed. *See*

4

*Marinello v. Bushby*, No. 95-60374 (5th Cir. Jan. 25, 1996).

The court then granted defendants' motion for summary judgment on the claim that the writing assignment violated Marinello's right not to speak. The retaliation claim went to trial. The court granted defendants' motion for j.m.l. after hearing Marinello's evidence. Marinello appeals both of these rulings.

III.

A.

We review summary judgment *de novo*, viewing the facts and inferences in the light most favorable to the nonmovant. *See Hall v. Gillman Inc.*, 81 F.3d 35, 36-37 (5th Cir. 1996). Summary judgment is appropriate if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"[N]either students [nor] teachers shed their constitutional rights to freedom of speech and expression at the schoolhouse gate." *Tinker v. Des Moines Indep. Sch. Dist.*, 343 U.S. 503, 506 (1969). In limited situations, the First Amendment extends to protect the right not to speak. *See*, *e.g.*, *Wooley v. Maynard*, 430 U.S. 705, 714 (1977); *West Virginia State Bd. of Educ. v. Barnette*, 319 U.S. 614, 642 (1943). We are aware of no case, however, in which the right not to speak has been found outside the context of governmental compulsion to disseminate a particular political or ideological message. *See United States v. Sindel*,

5

53 F.3d 874, 878 (8th Cir. 1995) (citing decisions).

Even assuming the right not to speak reaches beyond such a narrow setting, state school officials possess broad discretion in the management of school affairs, and we will not offhandedly interfere with the "daily operation of school systems." *Campbell v. St. Tammany Parish Sch. Bd.*, 64 F.3d 184, 187-88 (5th Cir. 1995). Educators have a plain and valid interest in carrying out the educational mission of their school, and that mission justifies restrictions on speech that would not be valid outside the educational context.[4]

The CVM trains students to become doctors of veterinary medicine. Part of that education includes the inculcation of the professional standards that veterinarians must follow. Indeed, as we noted in the first appeal, "[t]he standard by which the college regulated Marinello's speech mirrors that standard by which he would be measured once admitted to the profession for which his degree was to prepare him. The school's efforts constituted a legitimate educational mission." *Marinello* at 4-5.

Marinello does not challenge the ethical standards the CVM applied to his conduct. Rather, he simply argues that the writing assignment violated the First Amendment.

Regardless of whether that assignment required an admission that he violated the rules of professional ethics applicable to

---

[4] *See Bethel School Dist. No. 403 v. Fraser*, 478 U.S. 675, 682 (1986) ("Nothing in the Constitution prohibits states from insisting that certain modes of expression are inappropriate and subject to sanctions. The inculcation of these values is truly the 'work of the schools.'").

6

veterinarians, the writing assignment did not violate Marinello's right not to speak. The APSSC found that he had violated the rules of professional ethics. Fulfilling the CVM's pedagogical mission, the dean conditioned admission to the fourth year of school on completion of an assignment addressing those very rules in the context of Marinello's actions.

That no other student had to complete this academic assignment is of no moment, because no other student found himself in Marinello's situation. The dean apparently believed that, having been placed on disciplinary probation for an ethics violation, Marinello needed to exhibit an understanding of the ethics rules before continuing his education. The assigned academic exercise assigned was designed to accomplish just that.

We never before have found a student possesses a First Amendment right to refuse an academic assignment, and we decline to do so now. Summary judgment was appropriate.

B.

We review a j.m.l. *de novo*. *See Freeman v. County of Bexar*, 142 F.3d 848, 850 (5th Cir. 1998); *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1042 (5th Cir. 1998). "[W]e apply the same standard as the district court, considering all evidence with all reasonable inferences in the light most favorable to the non-moving party." *Id.* "We affirm if the facts and inferences point so strongly and overwhelmingly in favor of one party that no reasonable juror could arrive at a verdict contrary to the district

court's conclusion.  We reverse if we find substantial evidence upon which reasonable jurors might reach different conclusions." *Id.* (quotations omitted).

To prevail on his claim that the CVM denied him admission to his fourth year in retaliation for the exercise of his right to free speech, Marinello must establish that (1) the grade appeal letter constitutes protected speech and (2) the protected speech was a substantial or motivating factor in the decision to deny his application for admission.[5]  While we are inclined to agree with the district court that Marinello failed to establish that the letter constitutes protected speech,[6] we instead affirm on the basis of the court's finding that Marinello failed to establish the second prong.

Indeed, Marinello utterly has failed to proffer evidence to allow a jury to conclude that his speech was a substantial or motivating factor in the decision to deny him admission to the fourth phase.  Because he failed to establish a *prima facie* case, the court properly granted j.m.l.

---

[5] *See Brady v. Houston Indep. Sch. Dist.*, 113 F.3d 1419, 1423 (5th Cir. 1997); *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir.), *cert. denied*, 118 S. Ct. 603 (1997); *see also Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283-87 (1977).

[6] Marinello complains that the district court improperly shifted the burden of proving the truth of the letter's content.  The plaintiff, however, bears the burden of proving, by a preponderance of the evidence, every element of the cause of action.

The first element is that the letter constitutes protected speech.  If the letter contains statements Marinello knew were false or made with a reckless disregard for their truth, the letter is not protected speech.  Therefore, Marinello must come forward with at least some evidence that the speech does not contain knowingly false statements or statements made with a reckless disregard for the truth.  *See Libra v. City of Litchfield*, 893 F. Supp. 1370 (C.D. Ill. 1995).

The record is devoid of any direct evidence that the statements in the letter were a factor in the decision not to admit Marinello to the fourth phase. Indeed, Marinello did not even assert as much in his direct examination. To the contrary, aside from an inference that could be drawn from one colloquy between Marinello and counsel, all the evidence substantiates quite a different conclusion: The CVM did not admit Marinello to the fourth phase because he had failed to comply with an explicit prerequisite to admissionSSto write a synopsis of the Principles of Veterinary Medicine, apply them to his letter, and meet with the dean to discuss them.

The only evidence that Marinello's letter was a substantial or motivating factor in the decision not to readmit him comes from his direct examination, in which Marinello attempted to establish that he met the requirements by a paragraph in a letter written after a reminder that he had not completed the assignment and by a brief discussion with Dr. Nelson, who met with Marinello on the dean's behalf. The inference could be drawn that, because Marinello had met the requirements of the assignment, the CVM denied him admission in retaliation for his speech.

But Marinello testified on cross-examination that at the alleged meeting he declined to offer the letter as the required synopsis. Furthermore, he later was asked, "you did not get it completed, right, the assignment?" Marinello responded, "No, sir,

9

I did not."[7]  Even if we consider the letter sufficient to meet the synopsis requirement, however, Marinello refused to discuss it with Nelson when offered the opportunity, thus failing to satisfy the final requirement of the assignment.

All other evidence suggests Marinello was denied admission to his fourth year for failing to comply with the requirements of the assignment.  This was the reason offered by the dean in his cross-examination and is the reason apparent on the face of the letters exchanged between Bushby and Marinello in the spring of 1995, when he was denied admission.

Indeed, these letters negate the inference that Marinello was denied admissions despite his putative meeting of the requirements. As was brought out in his cross-examination, the May 9 letter informed him that he had been denied admission for failing to complete the assignment.  It was his response on May 15 that contained the paragraphs he attempted to characterize as a synopsis during litigationSSa response coming six days after he had already been denied admission to the fourth phase.

Finally, the record shows that the school could have expelled him for violating the ethical rules, which the APSSC found he had done.  Had the school truly intended to retaliate against Marinello for his speech, the dean would not have given him the opportunity to apply to the fourth phase if he had met the explicit

---

[7] On direct, Marinello was asked, "is this the letter that ultimatelySS that the dean required you to write a synopsis about and that you were ultimately exposed [sic] when you didn't comply with that requirement?  Is that the letter?" He responded, "I believe so, yes."

requirements of the assignment. If they truly wanted to retaliate by keeping him out of the CVM, Bushby and the dean would not have reminded Marinello of the assignment and provided numerous opportunities to comply. Indeed, even the May 9 letter informing him that he would not be admitted to the fourth phase, and the May 16 letter reiterating that the failure to comply with the assignment was the ground for that decision, provided him with the opportunity to complete the assignment and apply for admission to the fourth phase. Because Marinello failed to establish a *prima facie* case, j.m.l. was appropriate.[8]

AFFIRMED.

---

[8] In reaching this conclusion, we necessarily reject the argument that the letter remains a substantial factor in the retaliation because the assignment resulted from Marinello's writing the letter. Having found that the assignment did not violate Marinello's constitutional rights, and that no jury could find that the school retaliated for the letter *per se*, we decline to conclude that the letter motivated the retaliation nonetheless because the assignment would not have been given but for the letter. Such a conclusion would take too attenuated a view of the letter's impact. By failing to show proximate causation, Marinello failed to offer substantial evidence that the letter was a substantial or motivating factor for the retaliation itself.